**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**v.** **Case No. 4:19-cr-00117-01 KGB**

**CHICO JAHONEY RUSSELL** **DEFENDANT**

**ORDER**

Before the Court are defendant Chico Jahoney Russell's *pro se* motions for compassionate release (Dkt. Nos. 607; 609). The government responded in opposition (Dkt. No. 612). For the following reasons, the Court grants Russell's motions for compassionate release (Dkt. Nos. 607; 609). Also before the Court is Russell's motion for appointment of counsel (Dkt. No. 608).

**I. Background**

On August 7, 2019, Russell was charged by superseding indictment with conspiracy to possess with intent to distribute heroin and methamphetamine, conspiracy to commit money laundering, multiple counts of possession with intent to distribute heroin, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of a firearm (Dkt. No. 23). Pursuant to a plea agreement, Russell pleaded guilty to the charge of conspiracy to possess with intent to distribute heroin and methamphetamine, and the Court dismissed the remaining charges upon acceptance of Russell's plea (Dkt. Nos. 268; 269). On February 25, 2021, Russell was sentenced to 262 months of imprisonment, followed by five years of supervised release (Dkt. Nos. 268; 273). Russell is a citizen of Bermuda who has an active deportation detainer lodged by Immigrations and Customs Enforcement ("ICE") (Dkt. No. 609, at 13, 32–33).

In the pending motions for compassionate release, Russell states that he should be granted compassionate release or a reduced sentence because he has been diagnosed with an aggressive,

stage IV glioblastoma brain tumor (Dkt. Nos. 607; 609). He further states that he is not a danger to society because he is bed-ridden and needs 24-hour assistance due to his ongoing medical issues (Dkt. No. 609, at 12). The government responded requesting that the motion for a sentence reduction be denied, but in its response the government stated, "[i]t appears that Russell's medical condition would qualify as an extraordinary and compelling reason that would warrant a sentence reduction under the policy statements issued by the Sentencing Commission. It further appears that his condition may prevent him from posing a danger if released. The United States defers to this Court's discretion regarding whether granting the requested relief would comport with the sentencing factors in 18 U.S.C. § 3553." (Dkt. No. 612, at 3).

**II. Discussion**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States,* 560 U.S. 817, 825 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). A prison sentence, once imposed, usually cannot be modified by the district court. *Rutherford v. United States*, 608 U.S. 454, 458 (2026). Once a district court has pronounced a sentence and the sentence becomes final, the district court may only reconsider or alter the sentence pursuant to statutory authority. *See United States v. Addonizio,* 442 U.S. 178, 189–90 (1979). Therefore, "compassionate release . . . is not a freewheeling opportunity for resentencing . . ." *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022).

An inmate may bring a motion for compassionate release if the inmate has exhausted administrative appeals; however, if 30 days have passed since the inmate made the request to the warden, the inmate may proceed directly to the Court. *United States v. Houck*, 2 F.4th 1082, 1083–84 (8th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)); *United States v. Rodd*, 966 F.3d 740 (8th

Cir. 2020). The defendant bears the burden of showing that compassionate release is appropriate. *United States v. Avalos Banderas*, 39 F.4th 1059, 1062 (8th Cir. 2022). Then, "[a]fter considering the factors set forth in 18 U.S.C. § 3553(a), [a district court] may reduce a sentence if it finds that extraordinary and compelling reasons warrant a reduction," *Avalos Banderas*, 39 F.4th at 1061 (citing 18 U.S.C. § 3582(c)(1)(A)(i)), or that "the defendant is at least 70 years of age, has served at least 30 years in prison," and "is not a danger to the safety of any other person or the community," 18 U.S.C. § 3582(c)(1)(A)(ii).

**A. Administrative Exhaustion**

Russell states that he submitted an administrative request for compassionate release to the FMC Butner facility on March 26, 2026 (Dkt. Nos. 609, at 9; 612). On April 24, 2026, a social worker informed Russell in writing that his "Reduction in Sentence/Compassionate Release request was received, but no motion to the court has been filed by the [Bureau of Prisons ('BOP')]. As [Russell] and [his] family have been informed, the ICE detainer needs to be dropped for the BOP to continue to process [the] request." (Dkt. No. 609, at 35). Russell filed the pending motions on May 14, 2026, and May 18, 2026, more than 30 days after the initial administrative request on March 26, 2026. Therefore, Russell has satisfied his administrative exhaustion requirements and his motion for compassionate release is properly before the Court.

**B. Extraordinary And Compelling Reasons**

The record before the Court demonstrates that, following a fall of four to five feet from a top bunk on February 27, 2026, wherein Russell hit his head and lost consciousness, Russell underwent a CT head imaging scan (Dkt. No. 609, at 18). The scan showed the "possibility of an underlying mass in the right frontotemporal lobe" (*Id.*). An MRI of the head showed a "large infiltrative hyperintense mass of the right, frontal, parietal and temporal lobes as well as the right

insular region and basal ganglia extending into the right thalamus and brainstem . . . [that] also extends through the anterior corpus callosum to involve the contralateral left frontal lobe" (*Id.*). The mass was noted to be "[c]oncerning for high-grade primary brain tumor with gliomatosis cerebri" (*Id.*). Russell underwent a craniotomy on March 2, 2026 (*Id.*). Russell has undergone chemotherapy and radiation treatment (Dkt. Nos. 614; 625). He requires 24-hour physical assistance and has been transferred to palliative care (Dkt. No. 609, at 18).

Further, if true, the Court finds the assertions of Russell's confinement extraordinarily concerning. Russell, or the individual assisting Russell with his filings, states that Russell is in a cell without running water and is enclosed in a "posey bed" that is not properly cleaned after bouts of sickness induced by chemotherapy and radiation (*Id.*, at 5–6). Russell asserts that he does not receive assistance from nurses to go to the bathroom and is left in a diaper for hours at a time, which has led to skin rashes and peeling (*Id.*). Regardless of the conditions of his confinement, Russell's medical diagnosis and prognosis alone are sufficient to compel this Court to act.

Extraordinary and compelling reasons under United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13(b)(1)(A) include a "terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). . . . Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." In this case, Russell's stage IV glioblastoma qualifies as a terminal illness with an end-of-life trajectory based upon the record evidence before the Court. Russell's cancer is "a serious and advanced illness with an end-of-life trajectory," and his diagnosis satisfies the definition of a "terminal illness" under U.S.S.G. § 1B1.13(b)(1)(A). Therefore, Russell demonstrates extraordinary and compelling reasons for a reduction in sentence.

### C. Factors Under § 3553(a)

Finally, Russell argues that the 18 U.S.C. § 3553(a) factors weigh in favor of a release or reduction in sentence (Dkt. No. 609, at 10). The Court has carefully considered each of the § 3553(a) factors, which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed to comport with considerations identified in the statute;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for the considerations identified in the statute;
(5) any pertinent policy statement;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a)(1)–(7). The Court appreciates that the offenses to which Russell pleaded guilty and for which he was sentenced, both during these proceedings and earlier sentences, are significant. However, as stated above, Russell states that he is not a danger to society now and will not be in the future because he is bed-ridden due to his medical diagnosis, treatment, and prognosis and requires 24-hour assistance with the tasks of daily living (Dkt. No. 609, at 12). The government, while requesting that the motion for compassionate release be denied, states in pertinent part that "[i]t appears that Russell's medical condition would qualify as an extraordinary and compelling reason that would warrant a sentence reduction" and that it "[a]ppears that his condition may prevent him from posing a danger if released" (Dkt. No. 612, at 3). Further, the government "[d]efers to this Court's discretion regarding whether granting the requested relief would comport with the sentencing factors in 18 U.S.C. § 3553." (*Id.*). For these reasons, and based on the full record before the Court, the Court grants Russell's motions for compassionate release (Dkt. Nos. 607; 609).

### III. ICE Detainer

Russell has an active ICE detainer. The presence of an ICE detainer does not undermine this Court's finding that Russell has carried his burden to establish the existence of an "extraordinary and compelling" reason for compassionate release. *See, e.g., United States v. Bravo-Ziranda*, Case No. 3:18-cr-00415-K-1, 2023 WL 4494348, at *6 (N.D. Tex. July 10, 2023) ("The Court grants Bravo-Ziranda's compassionate release motions and orders that he be released to ICE custody pursuant to a detainer." (internal citations omitted)); *United States v. Sandoval*, Case No. CR14-5105 BHS, 2021 WL 673566, at *6 (W.D. Wash. Feb. 22, 2021) (collecting cases); *United States v. Pompey*, Case No. CR 97-0638 RB, 2020 WL 3972735, at *5 (D.N.M. July 14, 2020) (granting motion for compassionate release based on an extraordinary and compelling medical issue during COVID-19 and releasing defendant to ICE custody). Based upon the record before the Court, ICE has informed the BOP that the detainer will remain in place (Dkt. No. 612, at 3). Russell asserts that, if his detainer is lifted, he plans to self-deport to Bermuda and be under the care of his sister, who has submitted to the BOP and this Court a care plan detailing her ability to take care of and support Russell through end-of-life care (Dkt. No. 609, at 32–33, 40–44). The Court acknowledges that it has no authority to direct ICE once Russell is in its custody; however, the Court may exercise its discretion and fashion relief as necessary.

### IV. Conclusion

For these reasons, the Court grants Russell's motions for compassion release (Dkt. Nos. 607; 609). The Court denies as moot Russell's motion for appointment of counsel (Dkt. No. 608). The Court orders Russell's release from BOP custody to ICE custody pursuant to the detainer. The Court grants the government's request and directs that the BOP be given 14 days to facilitate a safe transfer for Russell.

It is so ordered this 2nd day of November, 2026.

Kristine G. Baker
Chief United States District Judge